# CASES

DETERMINED IN THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEAR 1941.

Marie Blachek, as Administratrix of the Estate of Victor Blachek, Deceased, Appellee, v. City Ice and Fuel Company and Herbert Reinke, Appellants.

## Gen. No. 41,651.

Heard in the third division of this court for the first district at the April term, 1941. Opinion filed June 25, 1941.

Henry J. and Charles Aaron, both of Chicago, for appellants; Franklin Raber and Byron S. Miller, both of Chicago, and Charles Aaron, of counsel.

Guy C. Guerine, of Melrose Park, for appellee.

Mr. Presiding Justice Burke delivered the opinion of the court.

Plaintiff filed her complaint in the superior court of Cook county, alleging that on December 2, 1939, the defendant, the City Ice & Fuel Company, was the owner of a motor truck which was then being operated by its servant, the defendant Herbert Reinke, acting in the course of his employment, in an easterly direction on Lake street near 33rd avenue in the village of Melrose Park; that plaintiff's intestate was then and there in the act of cranking a motor truck which was standing on the south side of Lake street, with the two left wheels on the paved portion of the highway and the two right wheels on the shoulder, in the exercise of due care and caution for his own safety; that as plaintiff's intestate was about to crank the motor of the truck defendants were guilty of one or more of the following negligent acts in the operation of their motor truck so as to cause it to run into and collide with the truck which plaintiff's intestate was cranking and into plaintiff's intestate, from which he received injuries resulting in his death on December 10, 1939; (a) negligently and carelessly operated their motor vehicle so as to cause it to run into and collide with the motor vehicle plaintiff's intestate was about to crank and plaintiff's intestate; (b) operated and maintained their motor vehicle at a speed greater than was reasonable and proper; (c) operated and maintained their motor vehicle at a dangerous rate of speed; (d) failed to keep a proper lookout for vehicles and persons on the highway; (e) failed to turn over to the second lane; (f) that although said defendant saw plaintiff's intes-

tate and the motor vehicle which plaintiff's intestate was about to crank, they failed to take any steps to stop or turn in order to avoid running into plaintiff's intestate and the motor vehicle; (g) that plaintiff's intestate and the truck which he was about to crank were in full view of the defendants; that the defendants disregarded their duty to operate said motor truck in a careful and prudent manner, but with conscious indifference to surrounding circumstances and conditions they wilfully, maliciously and wantonly drove and operated their truck at the time and place so as to cause it to run into plaintiff's intestate and the truck which he was about to crank. The complaint further averred that the deceased left him surviving his widow and one son as his next of kin. The answer of defendants admitted the the corporate defendant was the owner of the motor truck which at the time and place was being operated by the individual defendant as its servant in the course of his employment; denied that Blachek was in the exercise of due care for his own safety, denied the various charges of negligence and the wilful and wanton charges. A trial resulted in a verdict finding both defendants guilty and fixing the damages at the sum of $7,500. At the close of plaintiff's case defendants' motion to strike the wilful and wanton count was allowed. Motions made by the defendants at the close of plaintiff's case and at the close of all the evidence to find defendants not guilty, were overruled, and motions by defendants for judgment notwithstanding the verdict and in the alternative for a new trial, were likewise overruled. The court entered judgment on the verdict. By this appeal defendants seek to reverse the judgment and to have this court enter a judgment notwithstanding the verdict in their favor, or in the alternative to remand the cause for a new trial.

In December, 1939, Louis Ragone, 47 years of age, operated two truck farms in the village of Melrose

Park, Illinois. He had been a farmer all his life. At that time he owned a Federal motor truck which he purchased in 1922 when it was new. He used the truck in connection with his farming activities. The wheels on the truck had wooden spokes. On Saturday, December 2, 1939, at about 3:15 P.M., Ragone called on Victor Blachek, a neighbor. Victor Blachek was married to Marie Blachek and they had one child, Alfred, nine years of age. He worked as a tin cutter at the plant of the American Can Company and earned from $30 to $35 a week. He was 44 years of age and had been married 14 years. Ragone asked Blachek to give him a hand in loading and conveying some condemned railroad ties from a place known as the Proviso Railroad Yards, to his home. Ragone intended to saw the ties up for firewood. Blachek agreed to help as an act of friendshsip or accommodation to Ragone. Accordingly, the parties got on Ragone's truck. The truck was painted red and had two lights in the front and a red taillight. Ragone drove the truck. They arrived at the Proviso Yards at about 3:50 P.M. They loaded the truck with ties and finished at about 5:00 P.M., whereupon Ragone, homeward bound, started to drive the truck in a northerly direction on a dirt road. Blachek was walking on the dirt road in front of the truck. U. S. Highway 20, commonly known as Lake street, runs generally in a southeasterly and northwesterly direction. The roadway of Lake street is 65 feet wide and the pavement is 40 feet wide. The highway was paved with concrete and was in good condition. It is a four-lane highway, two lanes for eastbound traffic and two lanes for westbound traffic. The shoulders occupy approximately 8½ feet on each side of the highway. The accident occurred at 33rd avenue and Lake street in Melrose Park. The north and south streets that intersect Lake street are called avenues. About eight blocks to the east of where the accident occurred, 25th

avenue intersects Lake street. A mile and a quarter west of 25th avenue, Mannheim road, also called La Grange road, intersects Lake street. The area between 25th avenue on the east and Mannheim (La Grange) road on the west and extending in a southerly direction from Lake street for about two blocks, is vacant, and there are no streets in this vacant area. The right of way of the Northwestern Railroad runs east and west about two blocks south of Lake street. A "dirt road" or "mud lane," runs north and south across the vacant area between the railroad and Lake street. This is the road on which Ragone, preceded by Blachek on foot, were moving after having loaded the truck with the ties. The north and south streets called "avenues" from 25th avenue to Mannheim (La-Grange) road enter Lake street from the north. They do not, however, continue from Lake street south across the vacant area. These north and south avenues so entering Lake street are numbered 26th avenue, 27th avenue, 28th avenue and so on from east to west. There is no sidewalk on the south side of Lake street. There is a sidewalk on the north side of Lake street. There are no lights on the south side of Lake street between Mannheim (LaGrange) road and 25th avenue. The north side of Lake street between these points is more or less developed as city property, with a few business houses, residences, gas stations and garages. There is an electric light located at the northeast corner of each intersection from 25th avenue to Mannheim (LaGrange) road. On the north side of Lake street and directly opposite from the point where the dirt road comes into Lake street from the south, is a gasoline filling station. This station is located at the northeast corner of the intersection of Lake street and 33rd avenue, and has three pumps, each containing a light. Above the gas station was a floodlight containing three bulbs with reflectors that reflected the light to the north and downward on the station. On the

northwest corner of Lake street and 33rd avenue and across the street from the gasoline station, there was an electric light on a pole. This light consisted of a flat reflector with a single bulb facing downward in order to throw the light toward the ground. The light pole is about four feet from the north edge of the pavement. There are wooden telephone poles on the shoulder on the south side of Lake street, which are located about two feet from the pavement. They do not interfere with the vision of drivers of motor vehicles. The shoulder adjoining the south side of Lake street is comparatively flat, with a few ruts. The concrete pavement was slightly higher than the shoulder. It had rained earlier in the day. At the time of the accident, however, the pavement was dry. At the time of the accident the street light on the northwest corner of Lake street and 33rd avenue, the floodlight and the pump lights at the gasoline station were burning. The shoulder of the highway was muddy. The individual defendant, Herbert Reinke, a licensed chauffeur, was, on the afternoon of December 2, 1939, engaged in the line of his duty in driving a 1937 Ford ice truck. He was delivering ice for his employer. Ragone was the only occurrence witness. He testified that having loaded the truck he drove it north along the dirt road toward Lake street at a speed of 10 miles an hour, with Blachek walking ahead, and was on the highway about 2½ feet when his motor died and his front lights went out; that he struck a rut along the side of the highway; that when the motor died the right side of the truck was on the shoulder and the left side on the highway and Blachek was standing on the shoulder to the south of the pavement on Lake street and in front of the truck; that he (Ragone) asked Blachek to crank the motor; that Ragone then jumped off the truck and walked to the front and was standing at the front of the truck while Blachek was cranking the motor; that the truck was then facing in an easterly direction;

that the truck was equipped with Prest-O-Lite gas lights, two in front and one in the rear under the body; that he lit the lights before starting on the return trip after having loaded the truck; that he had no trouble getting the truck started; that as Blachek stooped over to crank the motor he (Ragone) saw a yellow truck crash into the left front wheel of his truck, knocking Blachek onto the shoulder of the highway; that Blachek was thrown about 15 feet; that the yellow truck "kept right on"; that it went east and turned north on 31st street; that the yellow truck had no lights in the front or rear; that witness had been driving for 20 or 25 years and was able to judge the speed of automobiles and trucks; that from the time of the accident until he saw the yellow truck disappear, witness judged the yellow truck was going about 40 miles an hour; that the yellow truck did not stop at any time within his view; that he (witness) got out on the highway and endeavored to flag cars; that in a few minutes a car driven by Paul Helmick drove up; that Blachek was placed in this car and taken to a hospital; that witness was at the hospital about 10 minutes and then returned to the scene of the accident; that witness' truck was still there; that when he returned Reinke, the driver of the yellow truck, and the yellow truck were there; that the accident happened south or across the road from the gasoline station. No flares, lanterns or other signals were placed for the purpose of warning persons using the highway of the presence of the Ragone truck. Ragone further testified that it was just getting dark at the time of the accident. Paul Helmick, a plumber, called by plaintiff, testified that at about 5:15 on the evening of December 2, 1939, he was driving a car west on Lake street; that it was getting dark; that he could see objects in the highway; that he saw the Ragone truck on the south side of the street as he approached; that he stopped his car and took the injured man to the hospital; that the defend-

ant Reinke was not there at the time he stopped; that he did not see Reinke until he returned from the hospital later on; that all the lights on the gas station and the street lights were burning; that he could see the damaged truck; that while it was dark it was not so dark that he could not see. Charles Caliendo, called by plaintiff, testified that he was a police officer employed by the village of Melrose Park; that he was driving a squad car; that officer Gene Fioravanti was riding in the car with him; that they were at 20th avenue and Lake street at about 5:25 P.M. on December 2, 1939; that they received a radio call and drove to 33rd avenue and Lake street; that the weather was clear; that he saw the Federal truck on the south side of the highway with two wheels on the pavement and two wheels off the pavement in a rut; that the left front wheel and fender and the frame were smashed; that the truck was red in color; that he did not see any other truck and did not see the defendant Reinke at the scene; that on learning that a man had been injured and taken to the hospital, he left his partner, officer Fioravanti, at the scene so that he could direct traffic; that he (Caliendo) proceeded to the hospital where he saw Blachek and Ragone; that he then drove back to the scene of the accident, accompanied by Ragone; that on returning he viewed the surroundings; that Ragone truck was headed east; that the shoulder of the highway was muddy; that there was no obstruction on the highway to the north of the truck; that the left front wheel of the truck was broken; that the fender was pushed in; that two pieces of the frame were out in front of the truck; that he found the rim of the left wheel of the truck 200 feet from the scene of the accident; that he paced the distance from the rim to the truck and while he was doing this he found three pieces of the spokes 95 feet east of the scene of the accident; that the Ragone truck had a red taillight; that the lighting conditions

at the scene of the accident were good; that he could easily see the wrecked Ragone truck as he drove up to the scene of the accident. Officer Gene Fioravanti, called by plaintiff, testified that he arrived at the scene with Officer Caliendo, responding to a radio call received at 5:25 P.M.; that he remained to direct traffic while Caliendo went to the hospital; that he called out several times whether anyone had seen the accident; that while directing traffic the defendant Reinke stated he was the one who had been involved in the accident; that he asked people whether or not they had seen the accident; that he did not observe a witness by the name of Fry (who later testified for the defendant) while he (Fioravanti) was directing traffic. From the testimony of Dr. Anthony Vincenti, a physician who examined Blachek at the hospital, it appears that the patient was suffering from a compound comminuted fracture of the right index finger, and a complete comminuted fracture of both femurs, had a fracture of the lateral aspect of the crest of the pelvic bone, and a fracture of the pubis bone and a laceration on the forehead, and was suffering from severe shock; and that he died on December 10, 1939. George Guerine, a law student and a brother of the attorney for the plaintiff, testified over objections as to the taking of photographs of the scene of the accident. Three of these photographs were received in evidence. Fred Fry, called by defendants, testified that he was 68 years of age and a retired auto mechanic; that he is the father of the owner of the gasoline station located on the north side of Lake street across from where the accident occurred; that he was in the gasoline station at about 5:30 P.M. when he heard a sound like a glancing blow and went out to see what happened; that he crossed the street over to the truck; that he saw Blachek lying 6 or 7 feet in front of and to the south of the pavement; that Ragone was standing over him and holding him up in a sitting position; that

when the witness arrived Ragone stepped out into the highway to flag a passing motorist; that Paul Helmick, driving west on Lake street stopped his car and they placed Blachek in his car and took him to a hospital. Fry further testified that he saw the Ragone truck on the dirt road about 15 feet south of the pavement and that the truck was "stuck"; that they were backing up and pulling forward but they couldn't pull out; that they unloaded a few ties; that a truck belonging to Klein's Department Store of Chicago came up and tried to pull the Ragone truck out; that it was then about 4:30 P.M.; that the Klein truck did not succeed in pulling the Ragone truck and disappeared; that witness talked to one of the men on the Ragone truck who came over to the gasoline station and purchased two gallons of gasoline; that there were no lights on the truck; that after the Klein truck left the men unloaded the ties and placed them alongside the highway; that the unloading of the ties took about 25 minutes; that witness went over to the truck to bring back the gasoline container; that the next thing witness noticed was that the truck pulled out on Lake street; that it was standing on a slant; that the front wheels were further north on the pavement than the rear wheels; that the truck was in a diagonal position facing east; that the men were carrying ties and loading them on the truck; that it was then about 4:45 P.M.; that it was dark; that the truck was standing on the highway 20 or 25 minutes before the accident occurred; that his attention was attracted by a noise that sounded like a glancing blow. Witness further stated that he saw the truck from about 4:00 P.M. until about 5:30 P.M., although not continuously, and that he had no trouble in seeing it. Francis D. Mulvihill, a clerk in the office of the corporate defendant, testified that on December 2, 1939 he saw Reinke at about 5:10 P.M.; that Reinke was then driving in for ice in order to make additional calls; that he observed that the lights on

the truck were lit, and that after loading the ice Reinke drove away; that witness then again observed that the lights were lit; that it was 5:15 P.M. when Reinke left and that it was getting pretty dark. Charles Carroll, called by defendant, testified that he was a truck driver for Klein's Department Store of Chicago; that on December 2, 1939, he was driving west on Lake street when he noticed a truck ''stuck'' south of the concrete; that after making a delivery he stopped, backed his truck across the road, took a chain and endeavored to pull the truck out of the ditch; that it was then about 4:15 P.M.; that the truck was equipped with old gas tank lights; that it was not dark enough at that time for lights; that witness was there 20 minutes; that he was not able to move the truck and then went on his way; that he did not have the lights lit on his own truck at the time. Clarence W. Arnold, an assistant highway engineer for the State of Illinois, called by defendants, testified as to the physical features in the vicinity of the place where the accident took place. He testified that there are three reverse curves in Lake street between Mannheim (LaGrange) road and the place of the accident. Plaintiff maintains that the photographs show the highway to be straight at the place where te accident occurred. Samuel Karns, called by defendants, testified that he was in the automobile wrecking business; that he purchased the red truck from Ragone on December 17, 1939, at which time it was in front of Ragone's house in Melrose Park and that at that time there was no Prest-O-Lite tank on the truck.

We will first discuss the contention that the court erred in denying defendants' motions to instruct the jury to find them not guilty. The burden was on plaintiff to prove by a preponderance of the evidence the allegations that defendants were guilty of one or more of the acts of negligence charged in the complaint, and that Blachek at and just prior to the time

of the accident was in the exercise of due care and caution for his own safety. Defendants maintain that there is no competent evidence to support the allegations of the complaint. The rule is that negligence and contributory negligence are questions of fact for the jury. They become questions of law only when the evidence is so clearly insufficient to establish negligence or due care that all reasonable minds would reach the conclusion that there was no negligence or that there was contributory negligence. A motion to direct a verdict for the defendants preserves for review only a question of law whether from the evidence in favor of plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. (*Ziraldo v. W. J. Lynch Co.,* 365 Ill. 197, 199; *Petro v. Hines,* 299 Ill. 236, 240.) Defendants argue that there is no direct evidence of any negligent act or omission on the part of defendants at and just prior to the accident, nor are there any circumstances appearing in evidence from which negligence may be inferred. They point out that the only occurrence witness who was allowed to testify was Ragone. The court excluded the proffered testimony of the individual defendant Reinke. Ragone admits that he did not see the defendant truck until after the collision; that he was standing to the east and to the south of his own truck which Blachek was in the act of cranking; that defendant's truck was traveling in an easterly direction to the west of Ragone's truck; that Ragone testified that "all of a sudden there was a crash and it threw the man about 15 feet in the ditch"; that he observed the truck as it sped away and that it was traveling at a speed of 40 miles an hour; that it had no headlights or taillight; that he did not watch the defendant truck; that he went over to where Blachek was lying and asked him if he was hurt; that he then went out into the highway

to flag a car to take Blachek to the hospital. Defendants urge Ragone had little, if any, opportunity to observe defendant's truck before the collision, either to determine its speed or whether its lights were lit; that he was in no position to observe the headlights on the truck after the accident; that the front end of the truck passed him before he realized there was an accident; that as it was traveling in an easterly direction Ragone was in its rear at all times after the accident; that he could not see the headlights on the truck and could not honestly say whether they were or were not lit at the time of the accident, and that it was physically impossible for him to determine whether or not the headlights on the truck were lit. Defendants also point out that Lake street is an arterial four-lane highway; that the region where the accident occurred is open country and not a closely built up or residence district; that the entire area on the south side of Lake street from Mannheim (LaGrange) road to 25th avenue, a distance of a mile and a quarter, is vacant prairie; that no streets or highways enter Lake street from the south between these points; that there is no sidewalk on the south side of Lake street and, therefore, no occasion for pedestrians to use that side of the highway; that pedestrians use the sidewalk on the north side of the highway; that vehicles traveling in an easterly direction on Lake street have no occasion to look out for traffic entering Lake street from the south; that assuming for the sake of argument that the defendant's truck was traveling at a speed of 40 miles an hour, under the circumstances then and there existing such speed would not be excessive nor greater than was reasonable or proper. They also contend that the driver could not be expected in the exercise of reasonable care to keep a sharp lookout for vehicles which might be standing on the highway unlighted and without flares or other signals set out to warn approaching motorists; that the driver had a right to

assume that other persons operating motor vehicles would comply with the motor vehicle laws, and that it is not negligence to fail to look out for danger where there is no reason to apprehend danger; that the accident was not due to the speed at which the truck was traveling, but to the fact that the driver did not see the Ragone truck. They urge that the location of the Ragone truck on the highway was such that it would be extremely difficult for a person driving in an easterly direction to observe the same; that it was standing partly on the shoulder and partly on the pavement against the dark background of the prairie; that the truck was old and weather-beaten; that it had been driven that day in the rain and was muddy; that it was loaded with old railroad ties which gave it the same general appearance as the background; that it had no lights, and there was no flares, lanterns or other signals to warn approaching motorists; that the light on the northwest corner of 33rd avenue and Lake street with one bulb and reflector which threw the light downward to the sidewalk was a considerable distance from where the Ragone truck was standing; that the gas station pumps are 15 feet north of the north edge of the pavement on Lake street, or 55 feet from where the truck was standing and the lights thereon reflected little, if any, light; that the flood-lights from the gas station were covered by reflectors which threw the light toward the north and away from the place of the accident; that the Ragone truck was standing on a curve at the time it was hit; that it is a matter of common knowledge that the headlights of a motor vehicle being operated on a curve do not cast a beam along the line or edge of the highway, but in a straight line in the direction of the vehicle; that for this reason the headlights of a motor vehicle approaching the Ragone truck would not throw a beam on the Ragone truck and that a charge of negligence cannot be supported by mere conjecture or surmise. On the proposi-

tion as to whether plaintiff proved by a preponderance of the evidence that Blachek was in the exercise of due care and caution for his own safety at and just prior to the time of the accident, defendants declare that the undisputed evidence is that he was standing in front of the truck cranking the motor; that in so doing he was assisting Ragone in the operation of the truck; that according to the testimony of Ragone the truck had been standing there one or two minutes before the collision; that it was dark and the truck's lights were out; that Blachek knew they were out; that there was no attempt made or any steps taken to relight them, or any attempt made to warn motorists along the highway from the rear of the truck; that Blachek knew no attempt was being made by Ragone to light the lamps or to place any flares or other signals to warn approaching motorists; that Blachek lived in the vicinity and knew that Lake street was an arterial highway heavily traveled; that he knew or should have known that a truck standing partly on the pavement and partly on the shoulder of the highway after dark without lights and without flares or other signals constituted a dangerous condition; that other vehicles traveling east along Lake street might collide with it; that he was bound to know that a truck standing on the highway after dark without lights or flares was so standing in violation of the law; that he was bound to know that in standing in front of a truck trying to crank it, he was in a place of danger; that he voluntarily placed himself in a position of danger; and that under the circumstances he was guilty of contributory negligence. Plaintiff answers defendants' contentions by asserting that there was competent evidence tending to establish the allegations of the complaint, and that the case presented a question of fact for the determination of the jury. Plaintiff maintains that the evidence clearly shows that defendants' truck was being operated at a high rate of speed; that there was

no obstruction in the highway to interfere with Reinke's view of the Ragone truck; that although 37 feet of the paved portion of the highway was open and clear for traffic, the driver nevertheless ran into the front of the stalled truck; that defendants' truck was being driven without any headlights; that after running into the Ragone truck, the driver failed to stop within a reasonable distance; that the Ragone truck was visible to other persons who were using the high way; that assuming that it was dark, defendant failed to operate the truck in such a manner and at such a rate of speed as to enable him to see and distinguish objects on the highway. Plaintiff calls our attention to Ragone's testimony that he was a few feet from Blachek; that he saw the truck as it struck Blachek and passed him; that he could distinguish the color; that he watched it until it turned north on 31st avenue, two blocks from the scene of the accident; that he could see the truck, which he testified had no lights, for at least two blocks; that the testimony of Ragone as to the speed of the truck, the fact that it had no lights and the fact that it turned off of Lake street is uncontradicted; that Fry, the father of the gasoline station operator and upon whom defendants relied, testified that he could see the Ragone truck every time he looked across the street and that he had no trouble in seeing it. Plaintiff also calls attention to the fact that both police officers who responded to the radio call, had no difficulty in seeing the Ragone truck as they approached the scene. In commenting on defendant's statement that it was dark at the time of the accident, plaintiff points out that all of the witnesses except Fry testified that it was getting dark. Plaintiff urges that the high rate of speed, the fact that Reinke did not stop until he turned off of Lake Street at 31st avenue, proves that he was either traveling at a high rate of speed, that it was impossible for him to stop, or that he did not intend to stop; that the accident was not

merely a glancing blow, is indicated by the fact that the spokes of the wheel were thrown 95 feet, and that the rim was thrown 200 feet from the scene of the accident; that Blachek was thrown 15 feet, and that Dr. Vincenti's testimony as to the injuries which caused his death, confirms the severity of the force with which defendants' truck struck the Ragone truck. Plaintiff also calls attention to the testimony that the door and glass of defendants' truck were broken, and that unless he was asleep he must have known that he was in an accident, that according to the testimony Reinke did not appear at the scene of the accident until 20 to 25 minutes after the occurrence, and that there is nothing in the record that would warrant this court in saying that Ragone did not see defendants' truck, or that he did not observe its speed. Plaintiff maintains, assuming it was dark at the time of the accident, that the evidence discloses there were sufficient lights burning directly across from the point where the accident happened to amply light the road so as to enable motorists to see vehicles on the highway; that Ragone's taillight was red and had defendants' headlights been on, such lights on hitting the red taillight would cast a reflection which could have been seen by the driver; that the body and fenders of the Ragone truck were not damaged; that the point of impact was the left front wheel; that the fact that defendants" truck did not strike the body or fenders of the Ragone truck indicates that Reinke was not paying attention to the road ahead and must have turned his truck to the south after he was alongside of the Ragone truck; that if it was dark and the lights on defendants' truck were burning, such lights should have shown up Ragone's truck. Plaintiff argues that the testimony shows that the accident occurred between 5:00 and 5:15 P.M. Defendant, on the other hand, argues that the accident occurred at 5:45 P.M. Plaintiff asks us to inspect the photographs and states that these photo-

graphs refute defendant's statement that there were curves in the highway. The photographs show that there is a curve in the highway at approximately the place where the accident occurred. We find, however, that it is a slight and gradual curve and that the jury would have the right to say that it did not interfere with the vision of Reinke. In answer to defendants' contention that the stopping of Ragone's truck with the left wheels on the highway was a violation of the statutes, our attention is called to par. 185 (a), art. 13, ch. 95½, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann 85.217], which reads:

"Upon any highway outside of a business, residence or suburban district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway."

Ragone did not "stop, park or leave standing" his truck. The truck stopped because of some mechanical or other defect. Plaintiff points out that while the paragraph quoted requires only 20 feet to be left open and clear for travel, the parking of Ragone's truck left 37 feet of the highway open and clear for defendants' truck. We also agree with plaintiff's contention that the mere parking of an automobile upon the highway without any lights is not of itself negligence and that all of the facts and circumstances must be taken into consideration to determine whether defendants were negligent and whether plaintiff's intestate was in the exercise of due care. We also agree with plaintiff that if we assume *arguendo,* that Ragone

was guilty of negligence, his negligence would not necessarily be the negligence of deceased, as each person is charged with his or her own negligence, unless there is something in the relationship which makes one responsible for the negligence of another. Plaintiff points out that Ragone's truck was standing almost entirely off the highway; that it was visible from the gasoline station 60 or 70 feet away; that it was visible to Helmick as he drove in a westerly direction on Lake street; that it was visible to the police officers as they approached the scene of the accident, and that the evidence shows that the negligence of Reinke caused the deceased's injuries and subsequent death. Defendants argue that the testimony of Officer Caliendo that he received a radio call at 5:25 P.M. is not worthy of credence, because when this witness testified before a coroner's jury he stated that he received the radio call at 5:45 P.M. On being cross-examined as to the alleged discrepancy, Caliendo insisted that at the coroner's inquest he answered that the radio call was received at 5:25 P.M. He also testified that at the time of the accident he made out a report and showed on that report that the call was received at 5:25 P.M. In answering the argument that Caliendo and Helmick could plainly see Ragone's truck as they drove to the scene of the accident, defendants ask us to remember that the police officer, as he drove to the scene, knew that there was an accident and would be expecting to see the truck, and that Helmick's attention would be attracted by the fact that Ragone was standing in the highway flagging him down. Defendants also insist that Ragone's testimony should be discredited as palpably false, and point out Ragone's testimony that he drove his truck out through the prairie at a speed of 10 miles an hour and that Blachek was walking ahead of him. Defendants insist that anyone knows that a person walking could not keep ahead of a truck traveling at a speed of

10 miles an hour. The distance the truck had to travel from the place where it was loaded with the ties to the highway was two blocks. We do not know how far ahead of the truck Blachek was at the time he started to walk, or whether the truck drove continuously until it reached the highway. These were all circumstances which the jury had the right to consider, and which they undoubtedly did consider in arriving at their verdict. Defendants also suggest that there is no evidence as to how the rim and the spoke got to the point where the police officer found them, and that considerable time elapsed between the happening of the accident and the finding of these parts. In our opinion the jury had a right to infer that the force of the impact was so great that it caused the rim to be carried 200 feet away from the truck, and that it caused the spokes to be scattered along the highway for a distance of 95 feet east of the truck. The jurors also knew that it would be possible for some person, either innocently or actuated by an improper motive, to move the rim and the spokes. The jurors also knew that the Ragone truck was taken from the scene of the accident by a tow truck. Defendants suggest that the parts could have fallen off in the process of towing. There is no evidence that this happened. However, the jury had a right to take all these things into consideration and undoubtedly did so in arriving at their verdict.

We have carefully read the transcript of the testimony and are of the opinion that it presented a question of fact for the jury. There is testimony which shows that defendants were guilty of acts of negligence and that Blachek was in the exercise of due care at and about the time of the occurrence. By returning a verdict finding defendants guilty the jury resolved these questions of fact against the defendants. There is ample evidence to sustain the verdict and we would not be justified in invading the province of the jury to

decide questions of fact. We now turn to a consideration of defendants' contention that the verdict is against the manifest weight of the evidence. In discussing the preceding points, we came to the conclusion that the evidence presented a question of fact for the jury. Defendants ask, in the alternative, that we reverse the judgment and remand the cause for a new trial because such verdict is against the manifest weight of the evidence. We have carefully analyzed the testimony and have considered the arguments of counsel and the cases cited, and are satisfied that the verdict is not against the manifest weight of the evidence. The case presented purely a question of fact.

At the time the case was called for trial the corporate defendant moved for a severance and asked that it be granted a separate trial. The basis for this motion was that the individual defendant Reinke was a material and important witness on behalf of the corporate defendant and that in a joint trial he would not be a competent witness, and that if a separate trial were granted he would be a competent witness for the corporate defendant. Defendants cite section 51 of the Civil Practice Act (ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.051]) providing that the court may grant a severance as an aid to convenience whenever it can be done without prejudice to a substantial right. They urge that no substantial right would be denied the plaintiff in granting a separate trial to the corporation and that a joint trial was not necessary. Section 2 of the Evidence Act (par. 2, ch. 51, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.068]) prohibits a party in a civil action from testifying where the other party sues as an administrator. We have no doubt that the defendants were handicapped in defending the case by the fact that the defendant Reinke was not permitted to testify because of the provisions of section 2 of the Evidence Act. The trial court is granted a broad discretion when a

motion for a severance is presented. If the court granted the severance it would be necessary to have two trials. It should be borne in mind that the primary liability was on the defendant Reinke and that the corporation is only liable under the doctrine of *respondeat superior.* We find that the court did not abuse its discretion in denying the motion for a severance. Even though the court had granted a severance we doubt that the defendant Reinke could testify as a witness for the corporation in a separate trial. After the severance Reinke would still be a party to the action. Defendants complain of the action of the court in denying their motion to withdraw a juror and declare a mistrial because of an emotional demonstration made by the plaintiff, the widow of the deceased, in the presence of the jury during the closing arguments. It appears that when the attorney for the defendants was discussing the question of negligence, plaintiff burst out sobbing. She was then ushered out of the courtroom. When the trial judge ruled on defendants' motion for a judgment notwithstanding the verdict and in the alternative for a new trial, he commented on the action of the plaintiff in weeping in the presence of the jury. He was of the opinion that it had no effect upon the outcome of the case. The widow had previously testified and the jurors knew that she was the widow. The law is that emotional demonstrations do not necessarily call for the granting of a new trial. We accept the judgment of the trial judge that in his opinion the weeping of the plaintiff had no effect on the outcome of the case. Defendants also maintain that the court erred in admitting three photographs taken by the brother of plaintiff's attorney. These photographs purport to show the roadway on Lake street and the various locations at or near the scene of the accident. Defendants argue that no proper foundation was laid for the offering in evidence of these photographs. The photographs were

identified by various witnesses as being true and correct representations of the highway, shoulder and gasoline station at the time of the accident, and purport to show conditions at the time of the accident. In our opinion the court ruled correctly in admitting the photographs. Defendants also point out that the court ordered all witnesses to be excluded during the course of the trial, and that the witness on whose testimony the photographs were introduced, remained in the courtroom and sat at the counsel table throughout the trial. Where the court has entered an order excluding the witnesses and a witness is called to testify, after having been present in the courtroom, it is within the discretion of the court to permit such witness to testify. The witness lived in Melrose Park. He testified only as to the taking of the photographs. He should have asked to be allowed to remain in the courtroom, or he should have remained out until after he testified. Under all the circumstances, however, we are of the opinion that the trial judge did not abuse his discretion in allowing him to testify despite the fact that he was in the courtroom during the trial.

Defendants argue that the court refused to give an instruction offered by defendants that:

"The court instructs the jury that while the negligence of one who is driving a motor vehicle may not be imputed to the one who is accompanying him and who does not have charge of the control and operation of the vehicle, yet where such a person so accompanying such driver has an equal opportunity with that of the driver to observe and learn the condition existing on a public highway at a particular time and place and fails to do that which a reasonably prudent person would do under the same or similar circumstances to prevent and avoid an injury, and because of his failure to exercise such care he sustains injuries, no action will lie for the recovery of damages for injuries so sustained either by such person or by his personal

representative in the event such injury results in death." This instruction is inapplicable to the facts of the case. Blachek was not a passenger, nor was he riding with the driver. The evidence shows that after the truck was loaded with the ties it was driven northward on the dirt road, that Blachek walked ahead of it, and that he was walking on the shoulder of the road at the time the motor of the truck stopped and at the time he was asked to crank it. Furthermore, we are of the opinion that three other instructions given at the instance of the defendants, fully instructed the jury on defendants' theory of the case. They also complain of the refusal of the court to instruct the jury that:

"You are instructed that contributory negligence is negligence on the part of the plaintiff or the injured person which causes, or partly causes, his injury, and which cooperates with negligence on the part of the defendant; in other words, if an injured person does, or omits to do, some act which a reasonably prudent person would have done or would have omitted to do under the same or similar circumstances, and that act or omission caused or partly caused his injury, this is contributory negligence, and in this case, if you find from the evidence under the instructions of the court that the deceased was guilty of contributory negligence, then the plaintiff cannot recover damages, even though you may find that the defendant driver was guilty of negligence." Defendants state that no other instruction was given which defined the term contributory negligence. The following instruction offered by defendants was given by the court:

"The Court instructs the jury that you cannot render a verdict because of sympathy, prejudice or passion, and the mere fact that the plaintiff's intestate was killed could not, in itself, create any liability on the part of either defendant to respond in damages to the plaintiff. It does not follow that because there was

an accident and the injury resulted in the death of plaintiff's intestate, there can be a recovery by the plaintiff in this case. The plaintiff must go further and prove by a preponderance of the evidence that the accident was the direct result of the negligence of the defendant driver, and the plaintiff must also prove, by a preponderance of the evidence that the deceased at and just prior to the time of the accident was in the exercise of due care for his own safety, for the law is that if the deceased himself was negligent and such negligence contributed to or concurred in bringing about the accident in question, then the deceased was guilty of contributory negligence and the plaintiff cannot recover, even though you may find that the defendant driver was guilty of negligence.'' The instruction that was given at the request of defendants was substantially the same as the one that was refused and about which they complain. They also complain of the following instruction given at plaintiff's request:

''The Court instructs the jury that persons operating vehicles in the public streets are bound under the law to operate the same with reasonable care for the safety of persons and other vehicles in the highway; and if you believe from the evidence in this case that the defendant, The City Ice & Fuel Company, by its servant, Herbert Reinke, was operating the truck in question in the highway on Lake Street, and that said Herbert Reinke, failed to use reasonable care for the safety of other vehicles, or persons, in the operation and control of the said defendant's truck, as alleged in the complaint, and that such failure to use reasonable care, if any there were, approximately caused the death of plaintiff's intestate, and if the jury further believe that plaintiff's intestate, Victor Blachek, was at the time in question exercising ordinary care for his own safety, you may find the issues for the plaintiff.'' Defendants object to this instruction because they say it eliminates from the jury's consideration

the question of whether Ragone's negligence may be imputed to Blachek. This instruction stated plaintiff's theory of the case. It is true that the instruction is not in accordance with defendants' theory. Each side may give instructions based on the theory of its case if there is evidence in the record to substantiate such theory. Furthermore, defendants' theory that Ragone's negligence might be imputed to Blachek was given in instruction No. 15, requested by defendants. This instruction reads:

"If you find from the evidence that the deceased participated with Ragone in the operation of the truck at the time and place in question, then the negligence of Ragone, if any, is imputed to the deceased, and if you further find that Ragone, at the time and place in question, was guilty of negligence and that such negligence of Ragone, if any, caused or contributed to the injury to the deceased, then the plaintiff cannot recover in this case and you will find the defendants not guilty." Defendants also maintain that the court erred in giving the following instruction:

"The Court instructs the jury that if they find from the evidence that the defendants at the time and just prior to the accident in question were operating their automobile truck at a speed which was greater than was reasonable and proper, having regard to the traffic and use of the way, or so as to endanger the life and limb or injure the property of any person, and that in so doing they were guilty of negligence, and as a direct result thereof the deceased, Victor Blachek, was killed, their verdict should be for the plaintiff, provided they believe from the evidence that at the time and immediately prior thereto, deceased and his next of kin, were in the exercise of that degree of care and caution required of them, as set forth in these instructions." Defendants insist that this instruction is subject to the same criticism as the previous one, in that it fails to take into consideration the joint operation of the

truck at the time of the accident, and the negligence of Ragone which would be imputed to Blachek. This instruction is in accordance with the theory of plaintiff and there is evidence in the record on which to base it. We are of the opinion that the jury was properly instructed as to the law of the case.

Because of the views expressed, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.