LADA SVRCEK, Ex'rx of the Estate of Leo Svrcek, Deceased, Plaintiff-Appellant, *v.* FRED KUDLATA, Ex'r of the Estate of Bessie Jiskra, Deceased, Defendant-Appellee.

(No. 59132;

First District (3rd Division)—November 7, 1974.

Angelos & Angelos, of Chicago (James M. Murray, of counsel), for appellant.

Arnold and Kadjan, of Chicago (Daniel N. Kadjan and Edward T. Graney, of counsel), for appellee.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Lada Svrcek, as executrix of the estate of Leo Svrcek, her husband, filed a wrongful death action in the circuit court of Cook

County against Fred Kudlata, as executor of the estate of Bessie Jiskra, seeking damages for her husband's death caused as a result of an automobile collision involving autos driven by Mrs. Jiskra, in whose auto Leo Svrcek was riding, and by a William Heise, Jr. Plaintiff's complaint was in three counts: the first count charged that Leo Svrcek had been a "passenger" in the auto and that Bessie Jiskra had driven in a negligent manner; the second count alleged that Leo Svrcek had been a "guest" in the auto and that Bessie Jiskra was guilty of wilful and wanton conduct in the manner she had driven her auto; the third count sought recovery under the family expense statute. (Ill. Rev. Stat. 1967, ch. 68, par. 15.) At the close of plaintiff's case, the trial court granted defendant's motion for a directed verdict in his favor on the first two counts. The record is silent as to the resolution of the third count. After her post-trial motions were denied, plaintiff brought this appeal. Although Heise and Arrow Petroleum Company, the owner of the Heise vehicle, had their cause of action against defendant consolidated with that of plaintiff at trial, only the Svrcek appeal is before us.

Both Bessie Jiskra and Leo Svrcek died after the collision and prior to trial. Heise, apparently the only other occurrence witness, was precluded from testifying at trial on the basis of the Illinois Dead Man's Act. (Ill. Rev. Stat. 1971, ch. 51, par. 2, amended, Ill. Rev. Stat. 1973, ch. 51, par. 2.) Consequently, plaintiff was compelled at trial to depend upon the pleadings in the case and reasonable inferences from the physical evidence found at the scene of the collision to reconstruct what had occurred.

Through the pleadings the parties admit that at approximately 1:30 P.M. on October 16, 1968, Mrs. Jiskra was proceeding south, and Heise was driving north, on Harlem Avenue, approaching 19th Street, a public highway running in an east and west direction, in the City of Berwyn. Svrcek was riding in the Jiskra auto. The two vehicles collided. Mrs. Jiskra died 2 hours after the collision without having regained consciousness. Mr. Svrcek was taken to a hospital where he died 2 months later. There is no issue as to Svrcek's contributory negligence.

In addition to the pleadings, Wilbur Koop, a Berwyn police officer with 19 years' experience, testified that he was called to the scene to investigate. The weather was clear. Upon arriving at the scene, Koop discovered that both autos had come to rest on the opposite sides of Harlem Avenue from which they had been travelling. The Jiskra vehicle had smashed head-on against the northwest corner of a building located on the east side of Harlem Avenue. The vehicle was pointed in a southeast direction. The Heise vehicle was found in the southbound lane of Harlem straddling the center lane and facing southwest. The rear left

side of the Heise vehicle had sustained damage, and parts normally attached to the undercarriage were missing. The condition of the vehicles, including the steering and brakes, was found to be good.

Officer Koop noted an undisturbed accumulation of dirt in the northbound lane which was not present elsewhere in the immediate area. In Koop's opinion, this spot marked the point of impact, with the deposit coming from the undercarriages of the vehicles upon collision. Although there were no skid or gouge marks, Koop noticed a track mark in the shape of a sharp curve leading from the dirt to the southbound lane. Koop asserted this mark was caused by the rear wheels of Heise's auto making a sharp turn against their normal direction. Parts of an automobile were located in the east parkway of Harlem, and wheel marks were seen on the sod nearby, 35 feet from the Jiskra automobile. Although there were no wheel marks leading from the dirt to the building struck by the Jiskra vehicle, the dirt, wheel marks on the sod, and building connected in an imaginary straight line. The officer noticed no debris in the southbound lane of Harlem.

On cross-examination, Koop testified that he had no knowledge that the unattached vehicle parts on the east parkway belonged to the Heise auto. He also had no way of knowing whether the parts could have landed on the parkway as a result of the collision or whether they could have been moved there by one of the onlookers milling around the curb. Although the officer denied the possibility that the dirt accumulation could have marked the place of impact of more than one accident, he stated that he lacked certain knowledge of the exact source of the deposit of debris.

Since at the time of this occurrence the traditional Illinois guest statute was still in full force and effect, plaintiff offered two witnesses in an attempt to prove that Svrcek held a "passenger," nonguest status during his ride in the Jiskra vehicle.

Mary Gregor testified that she had been a good friend and neighbor of Mrs. Jiskra and the Svrceks. In the 4- to 5-year interval between the death of Mr. Jiskra and the date of this accident, the witness observed Svrcek come to the Jiskra home on a regular basis and perform manual chores around the house. He cut grass, raked leaves, and shoveled snow. Moreover, Svrcek would drive Mrs. Jiskra to the store "once a week, every week," and, upon returning to the Jiskra home, bring her groceries into the house. On the date of the collision Mrs. Jiskra was 72 years old.

The witness further testified that on the date of the accident, while outside of her house, she saw Mrs. Jiskra back her auto out of the driveway and Svrcek enter on the passenger side. Mrs. Jiskra then called out to the witness through the open car window that "they were going to

Hillman's and that Mr. Svrcek would help her with her shopping." It was the first time Miss Gregor had ever seen Mrs. Jiskra drive an auto.

Defendant's counsel did not cross-examine Miss Gregor, but moved to strike all of her testimony on the ground of relevancy. The judge granted the motion and instructed the jury to disregard Miss Gregor's testimony. Trial was then recessed for the day.

On the following morning, plaintiff's counsel asked the trial judge in chambers to reconsider his ruling. The judge stated that he had erred in striking all of the testimony, and that he had been "premature" in striking Miss Gregor's statement of what Mrs. Jiskra had allegedly told her as the latter was driving away. The judge stated that he would reserve a ruling on defendant's motion as to the purported Jiskra statement until all the evidence was introduced.

Lada Svrcek, the plaintiff, testified that her husband retired from his maintenance job at a bank on January 1, 1968. He was 62 years of age at that time. The wife then gave testimony relating to damages.

After that testimony, plaintiff's counsel sought to elicit testimony from Lada concerning the nature of the relationship between her husband and Mrs. Jiskra. In so doing, counsel attempted to circumvent the preclusionary effect of the Dead Man's Act on the basis that defense counsel had waived the Act's protection in his opening statement to the jury. In that statement defense counsel had asserted that Svrcek and Mrs. Jiskra had been good friends; that Svrcek had performed a courtesy to his friend by accompanying her to the store; and that Svrcek was a beneficiary under Mrs. Jiskra's will. The trial court ruled that the opening statement of defense counsel did not constitute a waiver of the Dead Man's Act, and on that basis, would not permit plaintiff to testify as to her husband's relationship with Mrs. Jiskra. Plaintiff's counsel made a detailed offer of proof that plaintiff would testify that her husband was paid by Mrs. Jiskra for accompanying her to the store and taking care of the lawn.

When plaintiff rested, defendant moved for a directed verdict. The judge first stated that he was reversing his earlier ruling striking Miss Gregor's testimony. He then held that plaintiff had not met her burden of establishing a nonguest status for Svrcek, stating that the statement by Mrs. Jiskra to Miss Gregor was so "apparently improbable" that he doubted that it had ever been made and, even if it had been made, was too "uncertain, unclear, not precise, vague [and] ambiguous" to take the case out of the guest statute. The judge also stated that the evidence was insufficient to show negligence, although he had earlier remarked in chambers that "there is evidence of negligence." The trial judge then directed a verdict in favor of defendant.

■■ The guest statute applicable at the time of this occurrence provided in part as follows:

> "No person riding in or upon a motor vehicle * * * as a guest without payment for such ride * * * nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle * * * for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator * * * and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." (Ill. Rev. Stat. 1967, ch. 95½, par. 9—201, amended, Ill. Rev. Stat. 1971, ch. 95½, par. 10—201.)

The rationale of the act was that there should be a difference between the liability of the person who, out of the generosity of his heart, renders a gratuitous service to his fellow traveler over one rendering such service for hire. (Clarke v. Storchak (1943), 384 Ill. 564, 52 N.E.2d 229, app. dism. 1944, 322 U.S. 713.) The occupant assumes the burden of proving his status of passenger rather than guest at the time of the accident. (Leonard v. Stone (1942), 381 Ill. 343, 45 N.E.2d 620.) The determination of who is a guest is dependent upon the facts of each case (Miller v. Miller (1946), 395 Ill. 273, 69 N.E.2d 878), ever mindful that the statute is in derogation of the common law and hence is to be strictly construed. (Summers v. Summers (1968), 40 Ill.2d 338, 239 N.E.2d 795.) If the carriage tends to promote the mutual interests of the driver and occupant, or is performed primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest within the meaning of the statute. (Connett v. Winget (1940), 374 Ill. 531, 30 N.E.2d 1.) Benefit can be conferred by other than the expenditures of money. See Gass v. Carducci (1962), 37 Ill.App.2d 181, 185 N.E.2d 285.

■■ We recognize that we can sustain the action of the trial court in directing a verdict for defendant at the close of plaintiff's case only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.

Under that criteria, we conclude that the trial court erred in ruling that as a matter of law the evidence did not make out a prima facie case of "passenger" status for Leo Svrcek and of negligence on the part of Bessie Jiskra.

We consider initially the evidence adduced as to Svrcek's status in

the vehicle. Mary Gregor testified that not long after Mr. Jiskra's death some years prior to the accident in question, Svrcek began coming over to the Jiskra home on a regular basis and performing manual chores. She further testified that Svrcek drove Mrs. Jiskra to the store "once a week, every week" and, upon returning, would bring groceries into the home. While the witness never stated that she had seen Mrs. Jiskra pay Svrcek for his services, she likewise never suggested that his chores were performed as mere social courtesies for Mrs. Jiskra.

■ ■ This background adds additional force to Miss Gregor's testimony that on the day in question, Mrs. Jiskra called out to her from her open car window that Svrcek and she "were going to Hillman's and that Mr. Svrcek would help her with her shopping." There is nothing in the statement making it inherently implausible or improbable. Defense counsel did not cross-examine the witness and thus the testimony stands uncontradicted. Viewed under *Pedrick*, the jury could reasonably infer that Svrcek's presence in the vehicle was primarily and solely to aid the operator in her shopping and driving, and not to fulfill unspecified and unsupported social amenities. (See *Davidson v. Pugh* (1971), 1 Ill.App. 3d 670, 274 N.E.2d 205; *Justice v. Justice* (1969), 114 Ill.App.2d 254, 252 N.E.2d 493.) Thus, Miss Gregor's testimony was sufficient to establish a prima facie case at that point in the trial that Svrcek rode with Mrs. Jiskra as a passenger on the day in question.

We deem it unnecessary to consider whether defense counsel's reference to the relationship purportedly existing between the Svrceks and Mrs. Jiskra acted as a waiver of the preclusionary effect of the Dead Man's Act in the present trial. Defense counsel insisted at trial that his remarks constituted a proper response to plaintiff's counsel's opening statement concerning the relationship between the parties. Since each attorney argues that the other "opened the door," we presume that in a new trial both sides intend to be careful not to make any statement or adduce any testimony which might operate as a waiver of the Dead Man's Act.

We next consider whether the trial court erred in ruling as a matter of law that the plaintiff did not prove a prima facie case of Mrs. Jiskra's negligence. Under *Pedrick*, we hold that the court did so err.

Officer Koop, a veteran of 19 years as a police officer, testified that, upon his arrival at the scene, both vehicles were on the opposite sides of the street from which they had been travelling. Although only the Heise vehicle was found on the southbound lane of Harlem Avenue, various kinds of debris were seen on the northbound lane. An undisturbed accumulation of dirt, unlike anything else in the immediate area, was noticed in the lane. Sharp, curved track marks leading from the dirt

to the southbound lane of Harlem Avenue indicated to the officer that the rear tires of the Heise vehicle had been turned in an unusual direction. The officer further testified that since a collision involving two vehicles usually causes a deposit of dirt from the undercarriages of the autos, it was his opinion that the dirt represented the point of impact. Track marks found on the sod of the east parkway were in a line with the dirt and the corner of the building into which the Jiskra vehicle crashed.

While we express no opinion as to the conclusiveness of the evidence, the defendant should have borne the burden of going forward. The officer was qualified to testify as he did. (*Thomas v. Cagwin* (1963), 43 Ill.App.2d 336, 193 N.E.2d 233; *Siebens v. Konicek* (1969), 108 Ill.App. 2d 300, 247 N.E.2d 453.) The circumstantial evidence was not so slight as to render the issue of negligence one of speculation. If the jury were to reasonably infer from the evidence that the accident occurred in the northbound lane of Harlem, under Illinois law a presumption of negligence as to the Jiskra vehicle would be created. *Calvetti v. Seipp* (1967), 37 Ill 2d 596, 227 N.E.2d 758.

■■ Thus, we hold that the trial court erred in directing judgment for defendant on the first count of plaintiff's complaint at the close of plaintiff's case.

Since the case will be remanded for a new trial, we must consider the correctness of the trial court's action in directing a verdict for the defendant on the wilful and wanton count.

■■■ In the present case, both vehicles were found on the wrong sides of the street. No evidence was adduced as to the speed of the vehicles. No testimony was given as to the distance from the center line that the accumulation of dirt, the claimed point of impact, had been noticed. Since a wilful and wanton injury must have been intentional or committed under circumstances exhibiting a reckless disregard for the safety of others (*Klatt v. Commonwealth Edison Co.* (1965), 33 Ill.2d 481, 211 N.E.2d 720), the lack of such evidence in the present case clearly and convincingly demonstrates that, under *Pedrick*, the trial court correctly directed a verdict in favor of defendant as to plaintiff's wilful and wanton count.

Plaintiff cites two cases, *Larson v. Harris* (1967), 38 Ill.2d 436, 231 N.E.2d 421, and *Turner v. Ovall* (1970), 132 Ill.App 2d 273, 264 N.E.2d 839, in support of her theory that she had established a prima facie case under the wilful and wanton count. However, both cases are clearly distinguishable from the instant case. The only similarities in those cases with the one at bar are the absence of affirmative evidence of the conduct of the drivers and the lack of competent eyewitnesses. Although

defendant's vehicle in *Larson* was also found on the "wrong" side of the street from which it was travelling, in that case only one vehicle was involved in the accident. In the present case, both vehicles were found on the "wrong" side of the street. In *Turner*, there was evidence that the vehicle involved in the accident veered on and off the road, skidded, struck guard rails, travelled in the air, and was driven at an excessive rate of speed prior to the collision.

■■ The third count of the complaint seeks recovery on the basis of the family expense statute and, accordingly, is bottomed on the negligence count. Since we are reversing the trial court's ruling directing a verdict on the negligence count and remanding it for a new trial, the third count may also be reinstated.

For the reasons stated, the judgment of the circuit court of Cook County in directing a verdict on count two, the wilful and wanton count, is affirmed. The judgment of the court in directing a verdict for defendants on counts one and three of the complaint is reversed and remanded for a new trial.

Affirmed in part; reversed in part and remanded.

DEMPSEY and MEJDA, JJ., concur.