LORRAINE E. NEEDY, Adm'x of the Estate of Frank E. Needy, Deceased, Plaintiff-Appellee, *v.* MARVIN O. SPARKS, Defendant-Appellant.

First District (5th Division)    No. 63087

Opinion filed July 1, 1977.—Rehearing denied August 23, 1977.

Parrillo, Bresler, Weiss & Moss, of Chicago (John D. Moss and David J. Weiss, of counsel), for appellant.

Marshall E. LeSueur, of Finn, LeSueur & Challos, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Lorraine E. Needy, as administratrix, brought an action against defendant, Marvin O. Sparks, for the wrongful death of Frank E. Needy, her husband. Defendant filed a counterclaim for personal injury and property damages. The causes were severed and trial was had upon plaintiff's complaint alone. The jury returned a verdict in favor of plaintiff in the amount of $125,000. The court entered judgment on the verdict and on plaintiff's motion entered judgment on the counterclaim in favor of plaintiff. Defendant appeals from said judgments, raising numerous points of alleged trial error.

We affirm. To a large extent the necessary facts are recited and contained within our discussion of defendant's individual contentions on appeal. Other facts pertinent to our decision follow below.

On March 14, 1974, at about 4 p.m., a head-on collision occurred between a southbound vehicle operated by Frank E. Needy and a northbound vehicle operated by defendant on U. S. Route 45 approximately .3 of a mile south of Illinois Route 83 in Cook County. Needy was pronounced dead by a physician following his removal to a hospital.

On April 2, 1975, plaintiff's motion to advance the cause for trial on grounds of hardship was argued and granted. An order was entered setting the matter for trial assignment on June 2, 1975. The trial was commenced on June 17.

Hugh McDonough testified that he was present when the accident occurred. It was a clear day and he was proceeding north on Route 45, with defendant following just behind him in the same direction. Decedent was traveling southbound. There were four lanes in the road at the point of the occurrence, two northbound and two southbound. As he pulled into the inner northbound lane to pass a car he glanced in his rear-view mirror and observed defendant also driving in the inner northbound lane. He then looked forward and when he glanced back again there was

a collision. Both defendant's and decedent's vehicles were in the southbound lanes.

Defendant testified that he had no recollection of the collision itself. He admitted that prior to the collision he drove his vehicle in a northerly direction on Route 45 from 159th Street to the scene of the occurrence. He had knowledge or reason to believe that a mechanical failure or defect caused his car to be where it was at the time of the collision, in the southbound lane.

Cecil Crawford, director of personnel for the Belt Railway Company of Chicago, decedent's employer, testified as to decedent's work history. Decedent was a locomotive engineer from 1963 until the time of his death. Decedent had gross earnings of $12,407.69 in 1972, $11,929.48 in 1973, and had earned $3,381.04 in 1974 before his death. Decedent's minimum rate of pay was $54.50 per day.

Plaintiff testified that decedent was a diabetic who took insulin twice daily. Decedent was 46 years old at the time of his death. His health had been normal just prior to the occurrence.

Dr. John Gnap testified that he had treated decedent for various ailments, including some which were related to his diabetic condition. To his knowledge decedent cooperated and followed instructions concerning his medical treatment. Decedent first came to him following a hospital stay in 1971 for insulin shock. In May of 1971 Dr. Gnap gave decedent a release stating he was capable of returning to work.

Plaintiff introduced into evidence the 1969 Department of Health, Education and Welfare life expectancy tables. A 46-year-old white male had a life expectancy of 26.6 years.

■■ Defendant initially contends that the trial court erred in severing his counterclaim. We disagree. Sections 44 and 51 or the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, pars. 44, 51) deal with the problem of joinder and separation of claims.

" §44. Joinder of causes of action and use of counterclaims.
* * *

(2) The court may, in its discretion, order separate trial of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues in the case. Legal and equitable issues may be tried together if no jury is employed."

"§51. Consolidation and severance of actions. An action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right."

It is readily apparent from the foregoing provisions that the trial judge, guided by considerations of convenience and the rights of the litigants, is

granted a broad discretion to consolidate and sever claims. The granting of a motion for severance is within the sound discretion of the trial court, and this court will not reverse its determination unless such discretion has been manifestly abused. (*Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571; *Johnson v. Johnson* (1955), 5 Ill. App. 2d 453, 125 N.E.2d 843.) No such abuse of discretion is apparent in the instant case.

In this case the original counterclaim had contained just one count, for property damages of $2,000. On March 12, 1975, defendant had been given leave to file an amended counterclaim, adding a second count, for medical payment and personal injury. Count II reads in pertinent part:

"5. That as a direct and proximate result of the aforementioned accident, Counter-Plaintiff did suffer personal injury and did expend large amounts of money in an attempt to cure himself thereof.

WHEREFORE, COUNTER-PLAINTIFF PRAYS JUDGMENT IN THE SUM OF $500.00"

It was known by all the parties at that time that defendant had been hospitalized for treatment of injuries sustained in the occurrence and that the expense of hospitalization alone certainly must have exceeded $500.

On the morning of June 17, 1975, a venire was called and sworn to answer questions concerning their qualifications to sit as jurors. The court made some introductory remarks to the venire, including a statement to the effect that the matter was to be tried on plaintiff's complaint and defendant's counterclaim. Defense counsel then asked for and received a hearing in chambers, at the conclusion of which he presented an oral motion to increase the ad damnum of Count II of the counterclaim to $500,000. The motion was allowed.

The effect of this motion was to convert the $500 claim into a new $500,000 claim for personal injuries. There was no amended complaint proffered by which plaintiff's counsel could determine the alleged basis of the claim and the elements of damages. Absent severance, plaintiff and decedent's liability carrier would have been compelled to defend a serious personal injury claim without such knowledge as to the claim's basis, or else a continuance would have to have been granted for discovery purposes. However, the case had already been advanced for trial due to plaintiff's economic hardship and a continuance would have negated the advantages of such advancement.

In addition, since defendant's injuries were apparently extensive, and he had been hospitalized for some time, one would have reasonably expected a claim for serious injuries to have been presented before this case actually reached trial. Defendant's counsel contends that the delay was due to defendant's inability to decide which of his attorneys he wanted to handle his personal injury claim. Even if such were the case, we

note that counsel involved herein were acting for defendant on March 12 when the $500 personal injury claim was added to the counterclaim. Apparently then, at least five weeks prior to trial they were representing defendant for both counts of his counterclaim. In light of this fact, the delay until the day of trial for increasing the ad damnum of count II to $500,000 appears to be without explanation. The fact that a discretionary ruling on severance was made necessary by the dilatory conduct of the complaining party is a factor which will be given consideration in reviewing the discretionary ruling. See *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159.

Even assuming, however, good reason for such delay, it is clear that the last-minute amendment of the counterclaim surprised plaintiff. Plaintiff's ability to defend such a claim if proceeded on immediately would have been prejudiced, and any continuance would have increased plaintiff's economic hardship. Furthermore, defendant's ability to pursue his claim later, if the jury found in his favor, suffered no apparent prejudice. Under such circumstances we find that the trial court properly severed the counterclaim.

Defendant also contends, however, that the manner of severance in the instant case was prejudicial. The venire was initially informed that the jury would be considering both the complaint and the counterclaim. Following the severance the court informed the venire that:

"Now, ladies and gentlemen, what we have done herein when we absented ourselves from you, we severed the case. The case will proceed not on the counterclaim but on the complaint and answer. And we will not proceed on the counterclaim."

■■ We cannot agree with defendant's contention that this action must have prejudiced his case before the jury by leaving an impression that his counterclaim was somehow without merit, and had been struck, abandoned, or settled. We find, rather, that the trial court acted properly to inform the prospective jurors what issue would be for their consideration. Indeed, the court specifically stated that the case had been severed, thus indicating that it would be the subject of two separate determinations, with this particular jury only being concerned with plaintiff's complaint. There is no reason to speculate or conclude, especially in light of the evidence in the case, that such actions prejudiced defendant's case before the jury. In addition, we note that when the court addressed the venire concerning the severance, selection of the jury had not been completed. Defense counsel therefore had the opportunity thereafter to examine the prejudicial effect of such action in some of the prospective jurors' minds and we find no indication of any such prejudice in the record before us.

Defendant's second contention is that the trial court erred in failing to

grant defendant a continuance or a mistrial based on his physical incapacity. Section 59 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 59) provides in part:

"§59. Extension of time and continuances. On good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment.

The circumstances, terms and conditions under which continuances may be granted, the time and manner in which application therefor shall be made, and the effect thereof, shall be according to rules."

Supreme Court Rule 231 (Ill. Rev. Stat. 1973, ch. 110A, par. 231) enumerates four specific grounds for continuance, none of which is applicable here.

■■ A motion for continuance, except where it is based on a statutory cause, is addressed to the sound discretion of the trial court. (*Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 334 N.E.2d 96; *Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 321 N.E.2d 159.) The granting or denying of a motion for continuance will not be disturbed on appeal unless there has been a manifest abuse of discretion or a palpable injustice. (*Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.; Thomas v. Thomas.*) Once again, we find no such abuse of discretion in the record before us.

■■ Because of the potential inconvenience to the parties, witnesses, and the court, especially grave reasons for granting a continuance must be given once a case has reached the trial stage. (*Schneider v. Seibutis* (1972), 3 Ill. App. 3d 323, 279 N.E.2d 37.) Indeed, Supreme Court Rule 231(f) provides:

"(f) Time for Motion. No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." (Ill. Rev. Stat. 1973, ch. 110A, par. 231(f).)

Illinois case law requires that a motion for continuance based upon the illness of a party be supported by competent medical testimony stating the nature of the illness and the reasons that the party is unable to attend or participate in the trial. *Schnell v. Rothbath* (1873), 71 Ill. 83; *Corbly v. Corbly* (1917 abstract), 206 Ill. App. 527.

In the instant case, defendant first presented his motion for continuance on June 13, 1975, unsworn and unsupported by affidavit, in which it was alleged:

"1. That on June 11, 1975, at approximately 5:00 p.m., John D. Moss talked to Dr. Ponce DeLeon, one of the Defendant/Counter-

Plaintiff's surgeons, who informed him that Mr. Marvin Sparks is in no condition to participate in a trial at the present time, and would be physically unable so to do for at least one month."

The motion was denied with leave to present it again on June 17, properly supported by affidavit. On June 17 defendant again presented his motion, this time supported by the affidavit of Dr. Homero Adame, stating in its entirety:

"1. That I am a Doctor of Medicine licensed to practice in the State of Illinois.

2. That MARVIN O. SPARKS, is, and has been for some time, a patient of mine.

3. That it is my opinion that it would be detrimental to Mr. Sparks' health for him to participate in a trial at any time within the next month."

The court again denied the motion, stating that the affidavit was not factual and failed to state any basis for the affiant's conclusion. We believe this determination by the trial court was correct. See *Schnell v. Rothbath* (1873), 71 Ill. 83.

Defendant points to a number of factors concerning his physical and mental condition, including his wired jaw and the fact that he had suffered a memory loss concerning the occurrence. Despite his injuries, however, there is no evidence that defendant's participation at trial was substantially impaired. Indeed, defendant did attend and participate at trial. His wired jaw did not prevent defendant from testifying. There was no showing as to what improvement could be expected so as to allow defendant's appearance at trial one month later, and similarly there was no showing that defendant's memory of the occurrence might improve with time. Under such circumstances, we cannot say that the conclusory affidavit by Dr. Adame was sufficient to show that defendant was unable to attend trial or assist in his own defense.

■■ For similar reasons, we find no error in the trial court's refusal to grant defendant a mistrial based on his physical infirmities. Defendant moved for a mistrial at one point because he was bleeding into his colostomy bag. While we can sympathize with defendant, we cannot say the denial of this motion was error.

■■ The matter of declaring a mistrial rests in the sound discretion of the trial judge and unless there is a clear abuse of that discretion his judgment will not be disturbed on review. (*Stuart v. Rahn* (1974), 16 Ill. App. 3d 315, 306 N.E.2d 66.) As a general rule, a mistrial should be declared only as a result of some occurrence at the trial of such a character that it is apparent to the court that because of it one of the parties cannot have a fair trial. (See *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 216 N.E.2d 14; *Fitzsimons v. National Tea Co.*

360

(1961), 29 Ill. App. 2d 306, 173 N.E.2d 534.) In the instant case there is no showing that defendant's discomfort precluded his receiving a fair trial. Indeed, to the extent any of defendant's injuries were obvious to the jury one would expect any possible resulting prejudice to favor defendant, rather than plaintiff. Lastly, we note that it is not evident that it was even necessary for defendant to attend the trial on the days on which he did not testify. In view of his lack of memory concerning the occurrence, defendant's ability to aid his counsel was marginal, at best. We find no abuse of discretion in the trial court's refusal to grant a mistrial.

Defendant contends thirdly that the trial court erred in allowing a certified copy of decedent's death certificate into evidence. On June 18, Dr. Kizys testified that he had examined decedent in the emergency room of the hospital following the occurrence and found no signs of life. Dr. Kizys stated that it was his opinion that the immediate cause of death was crushing injuries sustained not more than one or two hours prior to examination.

On June 20, the court, relying on *People v. Fiddler* (1968), 102 Ill. App. 2d 319, 243 N.E.2d 515, admitted into evidence a certified copy of the coroner's certificate of death pertaining to decedent. Plaintiff's attorney then stated to the jury:

"Ladies and gentlemen * * * the exhibit no. 18, the coroner's certificate of death, states that Frank E. Needy died on March 14, 1974, and it indicates immediate cause of death to be multiple injuries, extreme."

The exhibit itself was never shown to the jury. The court was later made aware of the fact that the appellate court decision in *Fiddler* had been reversed in *People v. Fiddler* (1970), 45 Ill. 2d 181, 258 N.E.2d 359, and thus the certificate should not have been admitted into evidence. The court then called the jury and stated:

"Good afternoon, ladies and gentlemen. We would like to get all of your attention for a moment. Several days ago the Court admitted a coroner's certificate, the cause of death, into evidence. The Court, outside of your presence this morning, on motions we heard, denied that. I would strike that. The Court is now instructing you to disregard any reference with reference to the cause of death that was stated to you from that instrument. It is not now in evidence any longer."

We find that such action by the trial court cured the error of admitting the certificate into evidence. Our courts have held that the striking of inadmissible testimony will cure error except in extreme cases where it is apparent that there is substantial prejudice. (*McKenna v. Chicago City Ry. Co.* (1921), 296 Ill. 314, 129 N.E. 814; *People v. Endress* (1972), 5 Ill.

App. 3d 821, 284 N.E.2d 725.) In the instant case there is no apparent prejudice.

The jury had already heard live testimony from the treating physician concerning the cause of death prior to introduction of the death certificate into evidence. Once the error became apparent the court clearly and unequivocally informed the jury that the latter evidence had been stricken and that they should disregard it. The stricken evidence therefore was secondary and cumulative in nature. Defendant suffered no apparent prejudice from its admission, since even after its being stricken the jury had other competent evidence of the cause of death before it. Indeed, under the circumstances of this case, we believe that the jury could determine that the death resulted from the collision even in the absence of direct medical evidence on the issue. (See *National Bank of Bloomington v. Pickens* (1972), 8 Ill. App. 3d 58, 289 N.E.2d 64; *Hamel v. Delicate* (1968), 104 Ill. App. 2d 241, 244 N.E.2d 401.) While there was evidence that decedent suffered from a diabetic condition, the circumstantial evidence surrounding his death, *e.g.*, the collision occurring in decedent's lane of the highway, the obvious physical injuries suffered by decedent, the pronouncement of death shortly after being extricated from the wreck and taken to the hospital, all tend to show that the accident, rather than a diabetic attack which would have caused decedent to have the accident, was the cause of death.

Defendant's fourth contention is that the trial court erred in refusing to allow defense counsel to exercise a peremptory challenge against a prospective juror. We disagree.

On the afternoon of June 17, after the second panel of four jurors had been accepted by the parties and sworn, plaintiff interrogated four more jurors and tendered the panel to defendant. Defendant interrogated three of the prospective jurors, excused the fourth, and then interrogated his replacement, Miss Hopkinson. Defense counsel then announced that "[d]efendant will accept this panel." Plaintiff's counsel then proceeded to question Miss Hopkinson, during which interrogation defense counsel interrupted and attempted to excuse Mr. Armstrong, one of the other three panel members. The court did not allow the challenge.

■■ Illinois law requires that jurors be passed on and accepted in panels of four (Ill. Rev. Stat. 1973, ch. 78, par. 21), and our courts have announced the rule that until both sides have accepted the panel of four either side has a right to peremptorily challenge a juror previously tendered to the other side. (*People v. Schanda* (1933), 352 Ill. 36, 185 N.E. 183; *People v. Gray* (1911), 251 Ill. 431, 96 N.E.2d 268; *People v. Murray* (1966), 73 Ill. App. 2d 376, 220 N.E.2d 84.) Our review and construction of these cases leads us to believe that the trial court did not violate this

rule and therefore did not err in rejecting defendant's challenge to juror Armstrong.

■■■ The rule concerning peremptory challenges to jurors emanates from cases in which a panel of four had been tendered by one party to the other, the panel was broken by this opposing party by the substitution of one or more jurors, and then this "new" panel had been retendered to the original tendering party. The courts have ruled that at this point the original tendering party could not only interrogate and excuse the substituted jurors, but could also exercise a peremptory challenge against one of the non-substituted jurors which it had originally tendered to the opposing party. (See *People v. Gray; People v. Murray.*) As applied to the instant case, this rule would allow plaintiff's attorney, upon retendering to him of the panel with Miss Hopkinson on it, to peremptorily challenge one of the other three panel members which he had originally tendered to defense counsel. It does not allow defense counsel to so challenge a member of this "new" panel he had tendered to plaintiff, with Miss Hopkinson on it, *unless* plaintiff in turn "broke" the panel by substituting another juror and thus had to retender the panel to defendant for his consideration. Plaintiff did not so break the panel in the instant case and thus did not retender the panel to defendant. Defendant's attempt to excuse Mr. Armstrong was therefore improper, and the trial court did not err in refusing to allow the challenge. Having accepted and tendered a panel of four jurors to plaintiff, defendant may not exercise a peremptory challenge unless and until plaintiff breaks and retenders the panel to defendant, rather than just accepting the panel as tendered by defendant.

Application of the rule concerning peremptory challenges to the fact pattern in the case at bar is, to our knowledge, a matter of first impression in Illinos. We believe the construction that we have placed on this rule, and the cases announcing it, to be the most logical and sensible possible.

The only other possible construction is that the courts intended to allow peremptory challenges to jurors by a tendering party *anytime* prior to acceptance of the tendered panel by the opposing party. Thus, where defendant accepts and tenders a panel to plaintiff, and plaintiff does not break and retender the panel, defendant may still excuse any of the panel members so long as he interrupts and does so *before* plaintiff announces acceptance of the four jurors tendered to him.

The results of such a construction would be absurd. A "race" would develop to see if one side could announce acceptance before the other side interrupted. It would also provide a handy tool for greatly increasing the amount of time needed to complete the process of selecting a jury, since allowing such a challenge would then require a retendering of the panel to the challenging party, selection of a substitute, and then a tendering to the opposing party again. At this point the entire process

could be reinitiated by another interruption and exercise of a peremptory challenge. This procedure could continue until exhaustion of the allotted peremptory challenges. The concomitant increase in litigation time resulting from such a procedure is apparent.

Perhaps most persuasively, however, we note that placing such a broad construction on the peremptory challenge rule would effectively result in abrogation of the panel of four jurors as an "entity" of its own. The statute, as noted, requires that jurors be passed on and accepted in panels of four. However, to allow a challenge under the circumstances of the instant case would, in our view, circumvent the statutory requirements. It would be tantamount to allowing a party to pass on and tender a panel of three to the opposing party, reserving judgment on the juror they wished to fill the fourth spot, and *forcing* a retender of the panel to that party for purposes of selecting that fourth juror. We do not believe any of these results were intended by the courts when the peremptory challenge rule was announced. Thus, we find our construction of the rule to be the only viable one.

Assuming *arguendo*, however, that the broad construction was intended and Armstrong should have been excused, we find that defendant was not deprived of a fair and impartial trial. The evidence of liability was clear in this case and we do not believe the retention of Armstrong as a juror could be prejudicial to defendant's case under such circumstances.

Defendant's fifth contention is that the trial court erred in allowing Dr. Kizys to testify. Defendant objected that Dr. Kizys should not be allowed to testify on the grounds that: (1) he was a surprise witness not listed in plaintiff's discovery answers; and (2) the doctor failed to observe a motion to exclude witnesses and thus heard arguments of counsel prior to testifying. We find that the trial court properly overruled both objections.

Initially, we note that there is no showing in the record before us that plaintiff attempted to conceal the existence of this witness from defendant. Defendant has not even included plaintiff's answers to interrogatories in this record on appeal and has made no showing that plaintiff had in her possession any documents pertaining to Dr. Kizys' examination of the decedent.

■■ The sanctions, if any, to be imposed for failure to comply with discovery orders depends on the facts of each case and is within the trial court's discretion. (*Granger v. Turley* (1959), 20 Ill. App. 2d 488, 156 N.E.2d 610.) The trial court's discretion in deciding whether to impose such sanctions is broad and will not be interfered with unless it appears that it has been abused. (*Hearst v. City of Chicago* (1973), 9 Ill. App. 3d 1085, 293 N.E.2d 738.) No such abuse of discretion occurred in the instant case.

As noted, the record presents no evidence of bad faith or intentional

concealment by plaintiff. Furthermore, we note that defendant's counsel could not have been surprised by the calling of Dr. Kizys, despite omission of his name from the discovery answers. Defense counsel indicated to the court that he was aware that decedent had been pronounced dead by Dr. Kizys after he was taken to the hospital following the occurrence. It was reasonable for defense counsel to expect the doctor to testify, and thus he should not have been surprised.

In the recent case of *Blakely v. Johnson* (1976), 37 Ill. App. 3d 112, 345 N.E.2d 814, this court decided under a substantially similar fact situation that the trial court should not have barred a doctor from testifying. In *Blakely,* while the doctor's name was not revealed through discovery, the court stated that it was reasonable to expect that a doctor would testify as to plaintiff's injuries and thus defense counsel was not surprised. The name of the doctor was contained in hospital records which were available to defendant.

Defendant in the instant case would apparently distinguish *Blakely* on the basis that in this case, unlike in *Blakely,* he was given no opportunity to depose the witness prior to his testifying. We note, however, that defense counsel never requested an opportunity to depose the witness concerning his testimony. Furthermore, a preliminary interrogation of the witness was conducted outside the hearing of the jury. Both counsel were given the opportunity to examine Dr. Kizys during this interrogation and defense counsel chose not to pose any questions. Following this examination the doctor was allowed to testify concerning the cause of death. Under such circumstances we believe such testimony was properly admitted.

Defendant's contention that the court erred in failing to bar the testimony of Dr. Kizys on the grounds that he violated an order excluding witnesses is also without merit. It is within the trial court's discretion to permit a witness, present in the courtroom after entry of an order excluding witnesses therefrom, to testify. (*Blachek v. City Ice & Fuel Co.* (1941), 311 Ill. App. 1, 35 N.E.2d 416.) The trial court's determination in such a matter will not be disturbed on review absent a finding of an abuse of discretion. See *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 200 N.E.2d 149, *aff'd* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946; *Blachek v. City Ice & Fuel Co.*

In the instant case, Dr. Kizys entered the courtroom when the court reconvened at 2 p.m. At that time plaintiff's counsel moved to withdraw a witness and permit Dr. Kizys to testify. Defendant objected on the grounds of surprise and argument on that motion followed. During such argument plaintiff's counsel indicated that he wished to call the doctor to

testify as to the cause of death. This argument is what the witness heard.

■■ The witness was then sworn and questioned by the court with regard to the circumstances under which he happened to be in the courtroom. Dr. Kizys stated that "[a]ll the people were coming in and the policeman showed me over to the side and inadvertently I didn't come on purpose, your Honor." The court observed that the witness did not appear to understand English well, that the defendant had not been prejudiced, and therefore the witness would be allowed to testify. We find that the court's determination was correct. Defendant suffered no prejudice from this testimony, especially in view of our previous determination that the facts of the instant case would warrant a jury finding the accident to be the cause of death even in the absence of direct medical testimony. The violation of the exclusion order was apparently unwitting. Thus, the trial court did not abuse its discretion in permitting Dr. Kizys to testify.

Defendant next contends that error resulted from the trial court's refusal to allow various witnesses to testify concerning the alleged lack of careful habits of the decedent. We disagree.

Defendant attempted to call Officer Daniel Tully of the Lockport Police Department to testify that on March 8, 1974, he stopped the decedent for driving too slowly and for crossing the center line of the roadway. Tully issued the decedent a citation for improper lane usage. When Tully inquired if decedent had been drinking he replied no, that he was taking medication. The trial court refused to admit such testimony into evidence, sustaining plaintiff's objection that it was not relevant to the issues to be decided in the instant case. Defendant contends that such testimony had substantial bearing on the accident of March 14, 1974, because it showed behavior and a course of conduct which might explain why the accident happened.

■■ The admission of evidence is a matter largely within the discretion of the trial court and its decision should not be reversed unless such discretion has been clearly abused. (*Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) We conclude not only that no clear abuse of discretion is apparent in the instant case, but also that the trial court properly excluded the proffered testimony as not relevant to the case at bar.

■■ Evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Wimberley v. Material Service Corp.* (1973), 12 Ill. App. 3d 1051, 299 N.E.2d 425.) Contrary to defendant's claim, the proffered testimony of Officer Tully was not probative of the issue of decedent's lack of due care in driving his

automobile on the day of the occurrence. The fact that decedent on a prior occasion crossed the center line of a road while driving has no connection to the instant occurrence. Similarly, the fact that decedent might have been driving under the influence of an undetermined medication for an undetermined illness on this prior occasion is also irrelevant to the instant occurrence. There was no showing that the medication on this prior occasion was for the continuing diabetic condition suffered by decedent, and even if there had been such a showing, there was no testimony to establish that decedent habitually drove while under the influence of such medication. The irrelevancy of the proffered testimony is further illustrated by the other evidence in this case which indicates that the accident occurred on decedent's side of the center line of the highway.

Defendant's contention that the testimony of Officer Tully constituted admissible evidence of decedent's driving habits is clearly without merit. Tully's proffered testimony concerned only one prior specific occurrence, rather than "observed instances of specific conduct of such regularity as to constitute and demonstrate habit." (*Brown v. Nale* (1969), 106 Ill. App. 2d 238, 242, 245 N.E.2d 9, 11.) Officer Tully simply could not testify either as to decedent's careful driving habits, or lack thereof. Thus, his proffered testimony was properly rejected by the trial court.

Defendant contends that such testimony was at least relevant to the issue of damages. We find, however, that absent a showing of what the medication on this prior occasion was for a showing that decedent habitually drove while under its influence such testimony would not be relevant in computing the amount of damages to be awarded. In addition, we note that the jury had competent evidence from other witnesses before it of decedent's diabetic condition and the care which he took concerning this condition, and could consider such testimony in reaching its verdict.

■■ For similar reasons of relevancy we find that the trial court also properly refused to admit the proffered testimony of William Johnstone that on the day after the accident he went to the towing lot where decedent's vehicle had been taken and observed, inside the car, a broken bag of cookies and an unopened can of Squirt soda. There was no evidence to relate these items to the instant occurrence at all, other than their presence in the car following the accident. Certainly there was no evidence that decedent was consuming these articles while driving so as to distract his attention from the road or induce a diabetes attack. Indeed, there was no evidence of any kind to show a connection between this occurrence and decedent's diabetic condition. There was also no evidence to show that decedent consumed such articles in contravention

of his doctor's orders concerning his particular type of diabetes. Such testimony, therefore, was irrelevant as to both the issue of liability and the issue of damages. We note in addition, however, that to the extent testimony concerning decedent's consumption of cookies and soda might be relevant to damages awarded, there was competent evidence from plaintiff herself concerning such subject matter for the jury to consider.

Defendant's seventh contention is that the trial court erred in refusing to allow defense counsel to pose hypothetical questions to various doctors who had been called to testify.

■■ On cross-examination of Dr. Kizys defense counsel attempted to elicit from the doctor his opinion as to whether decedent's death could have resulted from a diabetic coma which occurred prior to impact. The trial court refused to allow counsel to propound a hypothetical question towards this end on the grounds that the facts assumed were not yet in evidence. This was error. A hypothetical question can be based on facts which are not yet in evidence, where there is a promise to produce the supporting evidence later. (See *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 316 N.E.2d 93.) We find, however, that such error was harmless in this case since defendant was in no way prejudiced.

Prior to exclusion of the proposed question, defense counsel was permitted to further interrogate the witness outside the presence of the jury. Dr. Kizys stated that he had run no tests for diabetes or insulin on decedent's body and that in his opinion decedent did not die prior to receiving the injuries which he found upon examination. This record, therefore, when considered with the other evidence adduced in the case, does not reflect that defendant was prejudiced by the court's failure to allow the posing of a hypothetical question concerning diabetes to Dr. Kizys.

Indeed, we note further that a trial court is not bound to permit hypothetical questions to experts even where there is a promise that the supporting evidence will be brought forward later. Permitting an expert witness to answer hypothetical questions based upon facts which have not been previously adduced in evidence upon the guarantee that such facts will subsequently be adduced in evidence is not desirable and is strongly to be discouraged. Whether or not such practice will be permitted in the particular situation is within the sound discretion of trial court. (*Gibson v. Healy Brothers & Co.* (1969), 109 Ill. App. 2d 342, 248 N.E.2d 771.) Thus, while it was error for the trial court to rule in the instant case that it could not allow such a question *at all*, it was well within the power of the court to omit such a question based on its own discretion. In either case, the proper course of action would then be for counsel to establish the facts to be used as a matter of record and then recall the witness in order to pose

the hypothetical question to him. No such attempt was made in the instant case, reinforcing our belief that defendant was not prejudiced by the ruling of the trial court in this regard.

Dr. Gonzalo Magsaysay was called by defendant to testify as to the decedent's physical condition. He testified that he represented the Belt Railroad, decedent's employer, as a company doctor; that on January 3, 1971, he was called to South Chicago Community Hospital to examine decedent; and that when he arrived at the hospital, he found that the patient's history had been taken by someone else. At the hospital's emergency room Dr. Magsaysay concluded that decedent was suffering from hypoglycemic shock, or low blood sugar, related to his diabetic condition. Defense counsel attempted to elicit from the doctor testimony related to his concern over decendent's ability to continue his job as a locomotive engineer. Plaintiff's objection was sustained on the grounds that Dr. Magsaysay was only an examining physician and not a treating physician, and thus any opinion testimony elicited should be in the form of a hypothetical question. Defense counsel made an offer of proof concerning the witness' testimony, showing that Dr. Magsaysay was concerned over decedent's ability to safely power a locomotive in light of his history of not caring for his diabetic condition. The plaintiff's objection was again sustained following the offer of proof.

■■ We cannot agree with defendant's contention that he was improperly denied a chance to pose a hypothetical question to the witness. Our review of the record reveals not only that at no time did defense counsel ever propound such a question to the witness, but also that the trial court encouraged counsel to use the form of a hypothetical question to elicit the desired information. Thus, there is no merit to defendant's contention in this regard.

■■ We also find, however, that the trial court incorrectly labeled Dr. Magsaysay an examining physician in rejecting his opinion testimony. An examining doctor is one who examines a person for purposes of testifying in a trial. (See *Jensen v. Elgin, Joliet & Eastern Ry. Co.* (1962), 24 Ill. 2d 383, 182 N.E.2d 211; *Braswell v. New York, Chicago & St. Louis R.R. Co.* (1965), 60 Ill. App. 2d 120, 208 N.E.2d 358.) In this case it is clear that Dr. Magsaysay did not examine decedent in 1971 for purposes of testifying in this case, which arose out of a fatal 1974 accident. The doctor was called to the emergency room of the hospital in relation to an employee of the Belt Railroad. He examined him, read the medical history chart, reviewed test results, and diagnosed the decedent's condition as hypoglycemic shock. In light of his diagnosis he then referred the decedent to a Dr. Brislen, an internist, for treatment. Under such circumstances we would conclude that Dr. Magsaysay qualifies as a treating, or attending, physician, and thus he could base his testimony both on objective or

subjective symptoms or on the history of the case. (See *Olin Industries, Inc. v. Industrial Com.* (1946), 394 Ill. 202, 68 N.E.2d 259; *Becherer v. Best* (1946), 74 Ill. App. 2d 174, 219 N.E.2d 371; *cf. Braswell v. New York, Chicago & St. Louis R.R. Co.*) We also believe, however, that the defendant suffered no prejudice from the failure to allow the witness to express his opinion concerning decedent's ability to perform in his position as a locomotive engineer.

In our view such testimony was not relevant to the instant case. Decedent's ability to drive a locomotive three years prior to the instant occurrence has no apparent relationship to the issues in this case. There has never been any evidence adduced establishing a nexus of any kind between this accident and a diabetic attack. (*Cf. Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) It was defendant who crossed the center line of the highway, not decedent.

Assuming *arguendo,* however, that such testimony might possibly reflect on decedent's driving abilities years later, or might provide a hypothetical cause for the occurrence if decedent had suffered another shock just prior to the accident, we note the following testimony by Dr. Magsaysay:

"Q. What happens when someone has hypoglycemic shock?

A. Well, certain parts of the body, especially the nervous system are starved. The metabolism slows down in all functions. Slows down most on the fact of the nervous system, the brain, and subsequently the rest of the body, the muscles.

Q. That affects the muscles did you say? What affect does it have on the reflexes?

A. Patient sometimes loses consciousness, complete consciousness in hypoglycemic shock."

This testimony was before the jury for its consideration. It clearly reflected on the possible driving problems decedent might encounter due to his diabetic condition. The simple fact is, however, that there was no evidence to link a diabetic attack with the accident. Thus, even assuming the denied testimony should have been admitted over plaintiff's general objections as relevant, we find no prejudice to defendant from its omission in light of all the evidence before the jury.

Defendant also called Dr. Andrew Brislen, who testified that he treated decedent in January of 1971 as regards his hypoglycemic condition. After decedent left the hospital on January 23, 1971, the witness did not see him again. He stated that the specific type of diabetes afflicting decedent was particularly unstable and difficult to control, even when following a planned program.

Defense counsel attempted to elicit the doctor's opinion concerning both decedent's ability to drive a locomotive or automobile in January of

1971, and decedent's ability to drive an automobile in March of 1974, when the accident occurred. The record reveals that counsel did not attempt to elicit such testimony by way of a hypothetical question, and thus his contention that the trial court improperly refused to allow a hypothetical question to be posed to the doctor is clearly without merit.

■■ We also find, however, that the court properly sustained plaintiff's objections to such testimony. As noted previously, decedent's abilities in 1971 bear no relevance to the issues in this case. Furthermore, it is clear that Dr. Brislen was not competent to testify as to decedent's abilities to drive a car in March of 1974 based on his 1971 treatment and observations. Defendant claims such testimony was relevant to the issue of damages; however, we note that there was ample evidence before the jury concerning decedent's particular type of diabetes, and the effects thereof, for it to consider in reaching a verdict. The court did not err in excluding such testimony.

Defendant next contends that the trial court erred in admitting testimony concerning tire "scuff marks" into evidence. Trooper Roger Klickner of the Illinois State Police testified that he was the investigating officer; that the accident occurred on a curve; that upon arrival at the scene he found decedent's car, with extensive front-end damage, standing wholly within the inner southbound lane, facing north; that he found defendant's car, similarly damaged, standing in the outer southbound lane, partially off the roadway, also facing south. He further testified that he found fresh debris at the scene and "observed some scuff marks leading from the double yellow line northbound, in the southbound lane and proceeding up to the point of impact." Defense counsel's objection was sustained as to the latter portion of this statement and the reference to the point of impact was stricken. The witness again related that he observed debris and scuff marks at the scene, with no objection to such testimony from defendant. Under such circumstances, we find that no issue exists on appeal concerning Officer Klickner's testimony that he observed scuff marks at the scene. Alleged errors not objected to at trial may not be considered on appeal. *Bohannon v. Schertz* (1974), 21 Ill. App. 3d 149, 315 N.E.2d 316; *Dupay v. New York Central R.R. Co.* (1969), 110 Ill. App. 2d 146, 249 N.E.2d 179.

An examination of the record reveals that defendant did object to the following question put by plaintiff to the officer:

"Q. Based upon your experience and what you found there at the scene, do you—particularly with regard to the skid marks, excuse me, the scuff marks, the debris and the location of the vehicle and the damage to the vehicles, do you have an opinion as to what caused the scuff marks to be laid on the pavement and when they were laid there?"

Following an extensive sidebar conference defendant's objection was overruled.

The record further reveals, however, that the officer never proceeded to answer the question, nor did he ever tender such an opinion throughout his testimony. Thus, while we agree with the trial court that a police officer may render such an opinion based on his investigation of an accident (see *Svrcek v. Kudlata* (1974), 23 Ill. App. 3d 978, 320 N.E.2d 377), we find that no issue exists for our review in the instant case since the sought-after testimony was never forthcoming. Clearly, then, defendant's contention of prejudicial error in this regard is without merit.

Defendant's ninth contention is that the trial court erred in refusing to allow him to testify as to his physical appearance prior to the accident. This testimony was aimed at impeaching the credibility of one of plaintiff's witnesses, Hugh McDonough.

McDonough testified that prior to the occurrence both his vehicle and that of defendant were proceeding in a northerly direction on Route 45. At 143rd Street the two cars stopped abreast of each other for a traffic light, and while McDonough glanced over at defendant at that time he did not take particular notice of him. He viewed defendant more carefully at the scene of the accident later on. McDonough testified that, except for the injuries, defendant looked essentially the same on the day of the accident as he did in the courtroom on June 18, 1975.

Defendant was later called as a witness in his own behalf and interrogated concerning his appearance at the time of the accident. An objection was sustained on the ground of relevancy and defendant made an offer of proof to show that his weight, hairstyle, and mustache were different at the time of the accident. The court again ruled that it would not admit such testimony into evidence.

■■■ A witness may not be impeached as to collateral, irrelevant, or immaterial matters. (*Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 316 N.E.2d 191; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, aff'd (1974), 57 Ill. 2d 19, 310 N.E.2d 9.) The test for determining whether the matter is collateral within this rule is "whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as part of his case or if it could be shown in evidence for any independent purpose. There are two classes of facts of which such evidence is admissible: (1) Facts relevant to some issue in the case under the pleadings; (2) facts admissible to discredit the witness as to interest, bias, motive, corruption, or the like. All matters not within these two classes are usually considered collateral." (*Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 1028, 316 N.E.2d 191, 194.) In the instant case the matter was clearly collateral. Defendant admits that he was driver of the car involved in the occurrence, and it is not contended

that McDonough misidentified defendant in the courtroom. The impeaching testimony sought to be admitted was not relevant to the issues in the case, but rather was sought merely for the purpose of contradicting the witness. Indeed, it was on cross-examination that the witness testified concerning the physical appearance of defendant. Where such collateral or immaterial matters are brought out on cross-examination counsel may not later contradict the witness' answers. (*Herget National Bank v. Johnson.*) We conclude, therefore, that the trial court properly excluded defendant's attempt at collateral impeachment of this witness.

We cannot agree with defendant's next contention that, even if none of the alleged points of error are serious enough to warrant a reversal in and of themselves, the cumulative effect of the trial court's rulings was to deny defendant a fair trial, thus requiring remandment of this cause for a new trial on the merits. Our disposition of each of the foregoing issues raised by defendant clearly shows this claim is without merit. Our review of the case has revealed few trial errors, none of which was prejudicial to defendant.

■■ Similarly, we reject defendant's contention that the trial court erred in refusing to direct a verdict in favor of defendant. Verdicts should only be directed "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Defendant contends that the *Pedrick* standard is met in the instant case in that there was no evidence that defendant's actions were the proximate cause of decedent's death. We find both the testimony of Dr. Kizys and the circumstantial evidence surrounding the occurrence and death, to be sufficient evidence to support a reasonable inference by the jury that decedent died as a result of the injuries received in this head-on collision, which occurred on decedent's side of the highway. Thus, the trial court clearly did not err in refusing to direct a verdict for defendant.

■■ Defendant's final contention is that the conduct of the trial court denied defendant the opportunity of receiving a fair and impartial trial. In support of this contention defendant cites numerous examples of allegedly prejudicial and improper conduct by the trial court.

We have considered, but find it unnecessary to discuss, this and other issues raised by defendant which we find to be without merit. The object of this court on review is not to determine whether the record is totally free of error, but whether any error occurred which operated to the prejudice of the appellant or unduly affected the outcome below. (*Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34.) We have carefully

reviewed the record and conclude that defendant was not prejudiced by the trial court, and that any errors committed, either individually or collectively, do not require a new trial. Consequently, we find that the trial court properly entered judgment on the verdict in favor of plaintiff, and properly entered judgment in favor of plaintiff on defendant's counterclaim.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.